Our final case of the morning is Agenda 7-116-129 LVNV Funding, LLC v. Trice. Are you ready to proceed? Ready? Anybody ready? Proceed. Good morning. May it please the Court, my name is Michael Carnuth. I'm here on behalf of Defendant Appellant Matthew Trice. I'll be dividing my time with the Illinois Attorney General's Office. I'll be focusing on the LVNV's statutory arguments regarding the ICA not applying to debt buyers, as well as LVNV's arguments that the voidness doctrine does not apply in this case. And the Attorney General will be focusing in on the constitutional arguments. In June 2011, the appellate court in this case held that if LVNV was not licensed as a debt collector when it sued Mr. Trice in March of 2008, that LVNV violated the ICA and that LVNV's complaint should be deemed void. The court based its ruling, the appellate court based its ruling on three primary things. The first being LVNV's, I'm sorry, the first being the ICA's licensing provision, which prohibits any entity from operating in the state of Illinois without a license. And that provisions imposition of criminal and civil penalties for doing so. The second being that the strong public policy that the ICA has with regards to practicing as a debt collector in the state. The policy declares that the practice as a debt collector in the state of Illinois affects the public welfare and it also is the subject to regulation and control by the state and is to be regulated in a way that protects debtors. The third principle basis for the appellate court's decision was reliance on this court's decision in Ford Motor. In that decision, this court continued the viability of the nullity rule, or what's called the voidness doctrine, where the party lacks the capacity to operate under a license. And that decision is vastly different from the decision that the LVNV relies on, which is the downtown disposal decision. The Ford Motor decision is one that recognizes that there's a distinction between business licensing and the licensing of the legal profession. This court obviously has the authority and the power to fashion rules with respect to the unlicensed practice of law. It must, however, defer to the legislature when the legislature imposes rules and regulations as to how businesses operate in the state. And in that regard, this court in Ford Motor, as well as in the case of Chatham, which we cited in our brief, recognized that to determine whether voidness applies, it sets forth standards that would apply in the case of a licensing violation. And those particular standards include whether or not the business has a legal capacity will be determined by whether or not the business licensing statute prohibits the conduct at issue. And secondly, whether or not the statute expressly was enacted for a public policy purpose. And third, whether or not the licensing provision included a criminal or civil penalty provision. Now, all those standards applied in this case, as the appellate court found, exist here. The ICCA is a statute that expressly prohibits any entity to practice any collection activity in the state without a license. That's clearly stated in Section 4 of the statute. The second factor that was found to apply by this court in the Ford Motor case, as well as the Chatham case, was whether or not the licensing provision was intended to protect the public. That's clearly met here because the ICCA states in Section 1A that this is a public policy statute. It's supposed to protect the public by doing two things. One is to instill confidence in the public that only qualified debt collectors are operating in the state. And secondly, to protect the public against any sort of abusive debt collection practices. But Mr. Carno, the act doesn't actually say that the judgment should be set aside if the plaintiff is unlicensed. Well, that's the application of the nullity rule, Your Honor, that this court has continued to apply after downtown disposal. And again, downtown disposal applies different factors that this court can fashion, as it did in downtown disposal, to the situation involving the unlicensed practice of law. But if the defendant – wouldn't the defendant get a windfall if the judgment of the circuit court is unenforceable? Well, Your Honor, the party that brings a case against a debtor that's not licensed, the legislature has already said you can't do that. And you can't do that because it affects the public welfare. And that's actually specifically stated in the licensing provision of the ICCA. In Section 14A, the legislature clearly stated that unlicensed debt collection activity is harmful to the public welfare. And this court has acknowledged that if that language is in the statute, along with an expressed prohibition against this sort of activity, as well as criminal and civil penalties, which ratchets up, obviously, the importance of the statute, then we will avoid any activity that that particular entity has committed. And we believe that the appellate court was correct in applying the four credit standards and the Chatham standards to this case. And, you know, this court has, you know, wrestled with whether or not the legislature has fashioned licensing rules in the context of businesses in the past. In the Lumpkin case, where the court was addressing whether or not the plumbing licensure statute was appropriate to bar any activity by plumbers who weren't licensed, the court indicated that even though we may not agree with, you know, the language of the statute, we have to defer to the legislature's findings, as well as, you know, their goals and purposes. And in terms of this case, the only open point or the only factual issue that was unresolved at the appellate court level was whether or not LVNB was not licensed. On remand to the trial court, that issue was addressed and resolved. It is now undisputed that LVNB was not licensed at the time that it sued Mr. Trice. And as a result, this court should apply the Voidness Standard, you know, in this case. With respect to the statutory arguments that LVNB makes with respect to whether or not debt buyers, you know, that argument is wrong. First and foremost is that the legislative intent of the amendments for 2008 was to expressly encompass debt buyers within the statute, and that's shown by the statutory amendment, which removed the phrase with recourse from Section 3D. And it's also shown by the drafter of the bill, the Attorney General's Office, which issued a press release shortly after the amendments were enacted, which stated that debt buyers had not been covered under existing state law until now. The press release also stated that the amendments are being enacted because of the expansive growth of the debt collection, the debt buyer industry, and because debt buyers were filing numerous lawsuits without any basis for doing so. And obviously it was addressing specifically the instance of, I'm sorry, specifically the party that we are at issue here, which is LVNB. And LVNB is a debt buyer. And taking the, I see that my time is up. If the court has any questions. You'll have time everybody. Thank you, sir. Thank you. May it please the Court. I'm Illinois Assistant Attorney General Cliff Berlow on behalf of the Attorney General's Office, which intervened in this case to defend the constitutionality of the statute. As this case is before the Court as a direct appeal under Rule 302a, I want to at least initially focus on the constitutional questions that got us here. This case has presented no fewer than six different constitutional attacks on the Collection Agency Act, and not one of them has any merit. And while ordinarily the appropriate place to begin would be with the circuit court's analysis, this case is somewhat unusual in that not even LVNB has been willing to defend the circuit court's decision on the basis that the circuit court provided. So it seems that there is no dispute between the parties at all that the circuit court's constitutional decision, its constitutional reasoning simply cannot stand. And there's good reason for that. You cannot have an equal protection violation where a statute does not distinguish between similarly situated parties. A statute is not arbitrary or irrational as a matter of substantive due process because the conduct that it prohibits is unlikely to lead to physical injury or death, indeed, particularly given the long tradition of financial crimes in this country. And a criminal statute is not impermissibly vague because it does not restate the common law rules that govern the way in which criminal penalties apply to corporations. So since there seems to be unanimity here that the circuit court's decision here was wrong, the most efficient, most expeditious way to resolve this case, and indeed the most proper in our judgment, would be for the Court to just summarily remand the case, summarily vacate the decision below and remand this case to the lower court for it to resolve all of these other issues that have been brought into this case by LVNB. In essence, what LVNB is trying to do here is bootstrap into a Rule 308 2A appeal a series of statutory issues and constitutional arguments that were not passed upon by the Court below. And so it would be entirely proper for the Court, in the interest of judicial economy, to simply move on to say that the circuit court's decision here is fundamentally flawed, and to let the circuit court, without relying on these strained and novel constitutional theories, for it to rule on these issues in the first instance rather than this Court. Now, having said that, if the Court chooses to proceed, we believe that the issues that LVNB has sought to bootstrap into this case are no less straightforward than the issues, than the arguments that the circuit court found so persuasive. Beginning with their dormant Commerce Clause argument, the simple answer to that is that you cannot have a violation of the Commerce Clause where a statute does not treat in-State and out-of-State entities differently. What the Commerce Clause prohibits is a State like Illinois discriminating against a company that is from out-of-State in order to advantage an in-State company. Here, everyone has to play by the same rules. Everyone is subject to the same standard. Everyone has to be licensed. And so where that's true, there simply cannot be a dormant Commerce Clause problem as a matter of law. Similarly, LVNB's vagueness argument is equally meritless. LVNB has taken the position that a statute is impermissibly vague because it does not, quote, clearly define exactly what type of conduct is prohibited. That's not correct. There's a difference between statutory ambiguity where a statute uses broad terms in terms of what's prohibited and does not provide a comprehensive list of every single type of conduct that fits within that broad phrase and something that's impermissibly vague. An ambiguous statute is one that is subject to multiple reasonable readings, and it requires the courts to draw upon the various tools of statutory construction that we're all familiar with, the canons of construction, legislative history, legislative purpose, overarching public policy, all of those tools in order to determine what the best reading is in light of the legislature's intent. Ambiguity exists only where a statute is incapable of intelligent interpretation, meaning even in spite of those tools, a judge simply cannot determine what the statute means. LVNB is seeking to transform the vagueness doctrine into the ambiguity doctrine. It's trying to conflate the two standards, and that is, as this Court has said and numerous other courts have said, is absolutely wrong. And so that really leaves us at the end of the day with what LVNB seems to believe is its strongest argument, because it's what it devotes the majority of its brief to, which is the argument that this is an irrational statute. It is arbitrary to require collection agencies to be licensed, and it is particularly arbitrary in the as-applied context of litigation. We cited in our reply brief a 2010 report from the Federal Trade Commission that chronicles in exacting detail the abuses that are uniquely associated with the debt collection industry. And they are uniquely associated with the debt collection industry in the particular context of litigation. Debt collection, looming in the background here, is the reality that in most of these cases, somewhere between 70 percent and 90 percent, these cases end up in a default judgment. And so what collection agencies do is they play the odds. If they file enough lawsuits, even if they are meritless, they will have a high enough percentage return where the other side doesn't show up and say that this is a meritless lawsuit, that they will be able to make money in the end. Given that history, and that exceedingly unique history, I might add, of abuse in a very license should be required. And that is not to suggest that every participant in the collection agency industry is a bad actor. But that is not our burden under a rational basis test. We need only show that the legislature had a reasonable fear of these negative consequences to the public, and it is free to exercise its police powers and act to try and shield the public from a documented harm. And that's exactly what we have here. So the only thing that they did in collecting, or trying to collect the debt, was retain an attorney to file suit. Does that still satisfy your concern, or would it satisfy anyone's concern about this being rational? Well, I think, Justice Carmier, that while I think what they are trying to do there is to rely upon the ethical rules as an adequate deterrent for the concerns that I'm raising here. The problem is that from a rational basis, from a constitutional standpoint, there's no narrow tailoring requirement. There's no least restrictive approach requirement as a matter of rational basis. So it may be that it is a – that the ethical rules are a reasonable deterrent at some level, although I think the evidence in history suggesting that these lawsuits are filed voluminously around the country that are utterly meritless strongly suggests that it is not enough in and of itself. But setting that aside, the legislature's burden here is not to demonstrate that some less restrictive or less intrusive means would be – is necessary to enact the law. It is only that this is a sufficient deterrent given its police power. The argument that the lawyer is not an extension – this is something of a statutory argument, but they also make it in the context of the constitutional standpoint. What LVNV is asking here is nothing less than to fundamentally restructure several centuries of law that define the relationship between an attorney and his or her client. An attorney is the agent of their principal, the client. Everything that the attorney does on behalf of their client is fairly attributable to the principal. And so the argument here that because they retained an attorney, they cannot be held accountable for the actions of their attorney is simply contrary to an extensive body of law. And for this Court to accept that argument, I think, would run counter to what this Court has said repeatedly and for many, many years before many of you were even on this bench. If there are no other questions about these issues at this time, I'll happily thank you. Good morning, Your Honors. Good morning. My name is Steve Swaver, on behalf of LVNV Funding. I think I'll cover the issues in basically the same order that my opposing counsel did, beginning with the appellate court's decision three years ago, which indicated  held accountable for the actions of his or her client. It really held that we had committed, my client had committed a crime. It held that it was proven my client committed a crime by bringing this lawsuit without first registering, and that if we couldn't have any defenses, then its conclusion was that the judgment that we, that LVNV got against Mr. Trice was void instead of voidable. Okay? And the suit should have ended right there because, because the appellate court really stretched the law to come up with this voidness ruling. Normally, no judgment is void unless there's an absence of subject matter or personal jurisdiction. Now, I realize that the nullity rule, which applies to attorneys, I mean, rather to corporations who file suits without an attorney, is an exception to that voidness rule in some cases. But an attorney filed a suit, so there's really, the nullity rule shouldn't have been applied in the first place. We don't really think there was any basis in this case to extend the nullity rule to this situation, and the other side has not cited anything outside of the attorney cases to say that the nullity rule has never been extended to a case like this. But even if it were to be extended to a case like this, I really do have to urge the four factors that the court, or the majority of the court anyway, identified in the downtown disposal case, which says where the court held that there's no such thing as an automatic nullity rule, and you had to examine four factors, all of which, by the way, if translated into the circumstances of this case, favor my client. My client filed the suit without any real knowledge that it was violating the law, and I'll get into that in a minute when I talk about statutory interpretation. It didn't know it needed a license, even though it inquired. And by the way, the inquiry was to the Department of Financial and Professional Regulation, and they said, you know, senior counsel there said, it doesn't look like you're a collection agency to me. Second factor was did LVNV act diligently in correcting its mistake, that is, getting a license. And indeed, it did file a suit in January and applied for a license in March, discretion being the better part of the ally, even though it doesn't think it needed a license under the 2008 amendments. And it had its license in August of 2008, months before the judgment was entered in this case. Mr. Swafford, is Mr. Burlow right that the prudent thing to do is to look at the constitutionality and send the rest of it back on all the statutory? Okay, well, I don't know how you can't, the argument I'm making now with regard to the nullity rule, there's no place to send it back to. The appellate court's already ruled against my client. It has to be decided here, okay? And on all the other issues, the trial court, except on the one constitutional issue, has also ruled against my client, so I'm not sure where he wants it sent back to. He didn't specify. I'm implying, I mean, I'm assuming he wants it transferred to the appellate court. He can answer that or not. Anyway, very quickly, the downtown disposal. The third factor is that whether or not the corporation's participation was minimal. Corporation A or LDNV had no participation at all vis-a-vis Mr. Trice. They never contacted Mr. Trice. No letters, no phone calls. And I probably should have made this clear to start with. There are different types of debt buyers. In my debt, my client does nothing but buy debt and hire attorneys to collect. Never contacts a debtor in any way, shape, or form. And I can't. But the argument was made that the what occurs here, of course, is that your client hires an attorney to contact a debtor in the sense of filing a lawsuit. And so therefore, since that the lawyer is acting on behalf of the client, so therefore the argument has been made here that it's, in fact, the client who is contacting and suing the debtor, not the lawyer. Well, this gets, okay, this gets into the statutory interpretation question of whether 2008 amendments even, I mean, the Act defines what a debt collector is, okay? In 2008, it was amended, well, let me back up. Before 2008, a debt buyer with recourse was considered a collection agency. With recourse, meaning a debt buyer who, collecting the debt, still owed the person he bought the debt from some portion of the proceeds. That type of debt collector was covered under the Act before 2008. In 2008, they took out the with recourse language, but they still said a debt buyer and who, I should quote it, I'm sorry, they still said that a person who buys indebtedness and engages in collecting the same. You know, and there's no, there's nothing in the Act that says that, that, that final lawsuit is necessarily collecting the same. I mean, you can say, well, of course you're collecting. But this, this Act is really just silent as to, as to, except in two circumstances, it is silent as to regulating anything. It imposes no regulation at all upon the litigation practice, except in two circumstances, which have nothing to do with debt buyers. So, I mean, I think it's a lead to just assume that filing a lawsuit is collecting a debt. It's, it's not, it's not, it's not unreasonable for you to interpret the statute that way, but that's not what the statute literally says. And, you know, and I have to go back and mention again, and I'm sure you've read it, that, that people in the, in the, in the position of my client did contact the Department of Financial and Professional Regulation. And I know it's not an official regulation or, you know, that has to be given deference. But the Chief Legal Counsel there looked at the statute and concluded that it was not intended, and this is post-2008, it was not intended to apply to somebody who does nothing but buy debt and then gives it to someone else to collect. It was to a debt collector, a normal. You see, when you think of, in common parlance, if I, and we had read all these briefs and written them, and, you know, if I say, what's a debt collector? And you think of somebody, well, the guy that's calling me every week on the phone and sending me dummy, dummy letters. I really don't think you think it's an attorney filing suit against you. And that's, pardon? Let me clarify something in my mind about the procedural posture in this case. First of all, you are not defending the trial court's rulings as to unconstitutionality, I noticed. All right. I defend it in part, yes, I do. Okay. Okay. First of all, the trial court ruled in your favor initially, and they went up to the appellate court and they said the judgment was void. Not voidable, void. Right. Back to the trial court. The trial court held the statute as unconstitutional because of holding the statute unconstitutional. The appellate court's basis of finding voidness was based on the criminal portion of the statute. That's gone. Therefore, the judgment is no longer void, but voidable. Is that correct? That's correct. Okay. So the judgment's back, really, right? So the judgment's back. It's voidable. But did the trial court rule it voidable? I mean, did they void the judgment at the end of the day? No. Okay. So now, the Attorney General suggests we vacate the finding of unconstitutionality, send it back. What would happen when it gets back? Are the issues that you're talking about now, what you did, is that what would be litigated? Well, I mean, he wasn't specific where we're sending it back to. I'm going to ask him, too. Everything that we've briefed has been ruled out in the trial court. And, actually, we lost under the element in the trial court. And the nullity, the void versus voidable, we lost in the appellate court. So I don't know where you can send it back to. I think you're stuck. I hope you're stuck with it. Well, you know, I shouldn't say that. You can just affirm. So, like I was saying, we did seek counsel from the department. And they didn't think we were a debt collector. And there's this, you know, there's this Attorney General press release, which also doesn't have any real force in the law, either. But it said, oh, let's see. The 2000 amendments expand the definition of debt collector to include the rapidly growing number of debt buyers in the industry. Debt buyers have not been covered under existing state law until now. You know, that still doesn't define the, that still doesn't reach the issue that we're presenting about whether we are engaging in collection activity because the statute requires not only do we buy debt, but do we engage in collection activity. And, of course, I shouldn't say of course. Most importantly, the statute was sure ambiguous enough that the legislature had to amend it again in 2013 to finally say that a debt buyer, you know, I don't have it here. Finally define a debt buyer and say what is and what is not, what regulations it is and is not subject to in 2013 amendments. So I would think that the presumption that when a statute is amended it was intended to change how the statute formally existed should be applied here. And that supports, again, the fact that a pure debt buyer who does nothing other than buy debt and hire attorneys should not be considered a debt   But I don't have any further comments on the existing amendments. Okay. Now to the constitutionality. I am. Mr. Swarbrick, before you move on to that, just to that last point, did the trial court judge adequately or at all answer that non-constitutional issue? He took the, Judge Moulds took the, had the position, sort of what Judge Tice said, file a lawsuit, you're collecting debt, move on. What I'm trying to determine is whether or not the trial court order complied with Rule 18 on determining if the case could be resolved without reaching the non-constitutional grounds. I mean, that's what our Rule 18 requires. He. As you've argued to us, there's, I think, at least two non-constitutional bases to Yeah, well, he ruled, well, the appellate court ruled against us three years ago on that void versus voidable melody issue. Okay. And Judge Moulds said, I'm stuck with Erwin. There's no law in the case. I think you're, I think you're right, LVMV. But I'm stuck with it. I can't do anything about it. And he ruled against us on the, on whether we're a debt collector. Let's see. Court has declared the, he makes specific findings at page 830, 831 of the appendix. And I think it, I don't know that, they're all regarding the unconstitutionality. I don't think he's, I don't have Rule 18 in front of me, but I don't, he doesn't seem to specifically address what you asked. Yeah. I'll take a closer look at it. Pardon? I'll take a closer look at it. Yeah. On the constitutionality. Isn't this constitutional under the rational basis test? Is it? Yes. Is it? Well, you know, here's the, here's the, am I cutting you off? No. I, you said yes. I, I, yeah. I think it's unconstitutional, of course. I'm not going to. No, I said, is it constitutional? Oh, is it constitutional? Oh, no. No. I. Would have been easier. My hearing is going to be up. Yes. Pardon? You thought you could say thank you and I could sit down. Yes. No, I, okay. I, I think we have a good, a good, I think the best argument on the due process is that given this, you know, the standard is, basic due process is that a defendant has to know that he's committing a crime. Okay? I mean, in this case, we've got the department saying, I don't have to register, or my client doesn't have to register. We have, you know, the need for 213 amendments, recognizing that the statute was unclear, so we really shouldn't, it was, you know, we didn't need to register. We've had federal, federal district court judges adopt our position with regard to the meaning of the statute. And, you know, it gets to the point where when there's this many people, you know, two sides of the question maybe, what's reasonable and what's not, but when a person of ordinary intelligence doesn't, can't reasonably understand what's prohibited, it's a violation of due process. That was our best argument on due process. Judge Maltz took an opinion, he took a view, which is not unreasonable either, that where he says that, he read the statute, section 14, which said you had to register, and if you don't register, it's a crime, you know, punishable by up to a year in prison, or jail, and a $5,000 fine. And he looked at that, and he said there's no mens rea here. You know, it doesn't, it's like an absolute liability thing. And he thought it violated due process for that reason. Now, my opponent says, oh, you can, evidently, he thinks that's troublesome because he, in his brief, says you have to imply a mental state, that we had to know we were doing wrong. Well, if that's the case, then I guess that avoids the problem Judge Maltz found. However, nobody's ever said that we knew anything we were doing wrong. Nobody's ever been proven that L.V. Envy ever knew that it was doing anything wrong. So, I do think that the constitutionality argument, decision by Judge Maltz, can be upheld. I think that... So, Mr. Burlow was wrong when he made it sound like you guys were one big happy family on the constitution. Well, I mean, yeah, I mean, he was wrong. But, I mean, I do, we agreed that strict scrutiny is not the correct... It's rational basis, okay? We conceded that. Oh, okay. Okay. And I like our due process argument better than Judge Maltz's, but I'll take it. It's not unreasonable to, you know, when you start holding people strictly liable without any mens rea for a crime and start voiding judgments, it really does look a little bit outrageous and unreasonable and irrational. I think so, anyway. But, I really think the whole case should be disposed of by going back, looking at the case, and saying the judgment wasn't void, the nullity rule doesn't apply, end of case, and so I ask for the judgment to be affirmed. Any questions? You know, there is something I want to say. My client in this case went to trial. This wasn't an invalid debt. And most of the time, when these cases are getting this far along, you've got the creditor calling the debtors or sending them letters to try to collect on the debt, then it gets referred to a collection agency, and that goes on for a couple years, and then you get to the point, in some cases, or at least with my client, where he buys the debt and he sues on it. And then he sues in the court that's nearest the debtor's home. The debtor gets notice. He can go in there. I mean, this notion that these are fraudulent debts is just made out of a full cloth. Sorry for my spiel. Thank you. Thank you. With respect to the procedural posture of the case, Mr. Swofford agreed that, you know, that the trial court did rule against LVNV on every single issue except for the constitutional issues. And in their papers, they also concede that they disagree with the judge's constitutional arguments or constitutional points. So, in terms of ruling, we would ask this court to rule on all the issues and rule in our favor, obviously, because the trial court's already ruled. The appellate court is – the appellate court sent this case back to the trial court with the sole purpose of confirming whether or not LVNV was licensed at the time that it sued Mr. Trice. And that was established that it was not, and therefore, it is – LVNV is in violation of the ICCA statute. Mr. Kernith, with the last point that was made by Mr. Swofford, you know, basically about how this was a legitimate debt, and I think there was a question on windfall early on, you mentioned the public welfare. How is the public welfare promoted by your interpretation? Well, Your Honor, in terms of requiring a license to collect debt, that's incredibly important. And one of the requirements is that it be on the radar screen of the state of Illinois. There's a lot of these debt collectors that, you know, come into this state, they take aggressive actions because they buy these debts for pennies on the dollar, and they don't register with the state, so nobody knows who's behind it, what they're doing, what their backgrounds are. And by retaining counsel, that doesn't solve anything. I mean, what they're trying to ask this Court to do is essentially give them a shield by retaining counsel so that they're not subject to the ICCA, and then asking the Court to exempt the lawyers from the ICCA, and therefore, nobody's responsible for any debt collection violations. That was not the intent of the legislature or the draft of the bill, which was the Attorney General. And Section 3D, which they rely on to say that debt buyers were not covered, is the same language that was in the 2013 amendments. That provision did not change. But they say that the 2008 amendments didn't apply to debt collectors because you should interpret in gauges and collecting the same to not include debt buyers who retain counsel. Well, but they concede that in 2013 that the statute did encompass debt buyers. If that provision didn't change, then it has to apply back to 2008. And the only change that was made in the 2013 amendments was to carve out explicitly provisions that did not apply implicitly as of 2008. And those are provisions in Section 8 which only pertain to debts that were controlled or owned by creditors. Those provisions would by default not apply to debt buyers because debt buyers own the debt. But the four provisions that were carved out in the 2013 amendments implicitly didn't apply to the debt buyers in the 2008 version of the statute. And that's made clear in the legislative history of the Act, which states that these amendments of 2013 were only for clarifying purposes. And these amendments were brought forth by the creditor bar or the creditor industry. And obviously they wouldn't be doing something that would broaden the liability that they would have under the statute. Were there violations of ICA shown beside or in addition to the lack of a license at the trial level? At the trial court? When this case was first tried? Or was it that raised that appeal? There was a dispute as to whether or not Mr. Trice owed the debt. And I believe that the trial court ruled against him. But, you know, in terms of whether or not, I mean, he'd represent himself pro se. It was a pro se case. And, but that, whether or not the debt is... Then on appeal? Then on appeal the... On appeal the issue was front and center as to whether or not, well, I'm sorry. First one. The appeal focused solely on whether or not the lack of a license should void the judgment. Okay. Thank you. And in terms of applying the four factors that this court applied in downtown disposal, the opposing counsel doesn't distinguish between the unlicensed practice of law versus the business licensing factors that this court has applied, which obviously all have been met in this case. You know, they completely gloss over that. And one final point, if I can make, I know my time is up, on the downtown disposal case is that in that case, the court made the important point that the, it would be improper to apply the voidness doctrine of the Noli rule against a party who the licensing laws for attorneys was meant to protect. This case is the totally opposite. This is where applying the Noli rule will protect those that the ICA was meant to protect, which are the debtors. Okay. If the court has any questions, I'd be happy to answer them. Thank you. I will begin with the question that Justices Thomas, Carmire, and in essence Kilbride, you all asked about my proposal, that the easiest way to dispose of this case would be to vacate and remand. First, LVNV has not defended the reasoning that the circuit court gave. It is relying on the same constitutional provisions. But one due process rational basis clause argument is not exactly the same as another. LVNV has completely abandoned, prior to standing before the podium today, any reliance on the trial court's reasoning in this case, and has offered its own, what it described, better version of the rational basis standard, rational basis argument. And so that, they can't claim to be defending the trial court's decision on the bases that the trial court provided. Now, the reason that we believe that it would be appropriate simply to vacate and remand in light of that, and I'll explain where I think this should go, is that this is here as a 302A appeal. It's a direct appeal from a circuit court's finding of unconstitutionality. It is mandatory jurisdiction before the court. And so it seems where you have essentially insubstantial constitutional holdings, that the most expeditious way, the best use of judicial resources for resolving this sort of case, would be simply to pass upon those arguments and to send the case back and not allow 302A to become a vehicle for bootstrapping along whatever other issues in the case you feel are appropriate to bring before the court. Now, Justice Kilbright, that is not to suggest that Rule 18 doesn't apply and that the doctrine of constitutional avoidance isn't relevant. But, and I will say, I did take another look at the trial court opinion. It did pass upon at least the statutory argument that the statute does not apply to LVNV. The Court said it does, for essentially the same reason as Justice Tice pointed out. But what the doctrine of constitutional avoidance provides, particularly in this Court, is that the Court should avoid resolving substantial constitutional questions where there are nonconstitutional grounds presented, where there is in essence very little, if not no, disagreement that the constitutional questions presented should be resolved in a particular way. That is not a substantial constitutional question. It is a straightforward issue. And while the Court certainly is free, we're not saying it's bound or precluded from passing upon these other issues, it would certainly be free and entirely appropriate under these circumstances to simply rule upon these issues and to remand the case. Kennedy. Is there a problem, as Mr. Swofford seemed to indicate, that with the previous rulings of both the circuit and the appellate court on the very issues, we'd be remanding back?  I'm not going to go into the specifics of the statute, but I'm going to go into the specifics of the application of the statute and on the void and voidable issue. What the appellate court has ruled on is that the voidness rule applies to judgments in favor of unlicensed debt collectors. That court has not ruled upon the argument that L.V. Envy has made that the statute does not apply to them. The case was remanded back to the trial court. The trial court, bound by the void-voidable rule, agreed with Mr. Trice regarding the application of the statute under these circumstances. That issue has not been passed upon by the appellate court, so presumably they would have a perfectly reasonable avenue of appeal on a pure statutory question. Again, I'm not suggesting, Justice Thomas, you can't rule on the statutory question. I'm just simply saying, as a matter of judicial economy, you may choose not to. But you, as intervener, though, you part ways with both attorneys over there. I think your co-counsel at your table indicated he'd rather this Court rule on all the issues. And I understand the impulse to have this Court resolve as many issues as possible because it's definitive and final, but in certain we don't want 302A to turn into a vehicle for expanding cases in front of the Court.  So I'm not suggesting that this Court rule on all the issues should be passed upon   by the appellate court. Three constitutional ones from the trial court, three constitutional issues from the LVNV's brief, and a further three statutory issues from LVNV. At some point, this becomes abusive of the rule that's designed to require trial courts to be very cautious and careful before they pass upon the constitutionality of a State statute. And that's all we're suggesting. Let me briefly conclude with just a brief note about the statutory argument. LVNV has relied heavily on the 2013 amendments, I should say, to the Collection Agency Act. It is very clear from the legislative history that those are intended as clarifying amendments. That's why the presumption that those amendments change the prior law does not apply. This Court has repeatedly said that legislative statements in legislative history that show that there was not an intent to change the substantive law is sufficient to make an amendment a clarifying one. What's more, that canon of construction applies only where the amendment is to an unambiguous statute. LVNV has argued pretty much throughout that this is an ambiguous statute. That's the basis of its vagueness argument. So LVNV is asking for the Court to apply a canon of construction that, if it's right, about whether or not the statute is vague or not, simply does not apply. Chief Justice, may I ask one question? Again, on remand, just so it's clear in my mind, if we do what you suggest, vacate the finding of unconstitutionality and send it back, it goes back to the trial court in the posture that it came from the appellate court, I take it. And that is that the appellate court has said the judgment is void. That is correct. And at that point, assuming that the trial court didn't want to revisit its statutory determination that the statute applies here, then they would have a right to appeal that question to the appellate court. Okay. Thank you. Is your question answered? Yes, it is. Thank you, Your Honor. Thank you. Case number 116129, LVNV, funding LLC versus Matthew Trice, is taken under advisement as agenda number seven. Marshal, the Illinois Supreme Court stands adjourned until Tuesday, May 20th at 9.30 AM.